### M. L. Looper v. The State.

No. 4249. Decided June 19, 1909.

1.—Gaming—Craps—Insufficiency of the Evidence.

See opinion where the evidence is held to be insufficient to sustain a conviction for playing craps at a place not a private residence occupied by a family. Following Hanks v. State, 54 Texas Crim. Rep., 1.

2.—Same—Bill of Exception—Practice on Appeal.

When upon appeal the objection to the ruling of the court on a question of evidence is based upon a fact not verified by the bill of exceptions, it will not be considered.

Appeal from the County Court of Johnson. Tried below before the Hon. J. B. Haynes.

Appeal from a conviction of gaming; penalty, a fine of $50.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was charged with playing craps at a place not a private residence occupied by a family, his punishment being assessed at a fine of fifty dollars.

The State relied upon the testimony of a man named Steakley, constable of precinct No. 1. He said that about the 25th of February, 1909, he saw appellant at Newberry's frosty joint about eight o'clock at night; that he came up Henderson street, and saw a light back in the middle room through the crack of the door in Newberry's frosty joint; that he went up to the west door of the building, which was a

side door, and heard them shooting craps, and heard money; that he went away, and was gone about fifteen to twenty-five minutes, and returned, bringing Mr. Burdett with him; that when he returned he went to the west, or side door, of the joint, and stood there a moment or two, and heard the rolling of dice, but he could not see anything in the house nor any of the parties. He testified that he heard them calling the "point;" that six was the point. "Then I heard them call six and I heard them say eight was the point." He testified he understood the game of craps, and knows how to play it, and described how it is played; that after he heard what he testifies above he stepped back and got a breast yoke from an old wagon, and began beating on the door, and bursted the top part of the panel; that after he hit it he heard a rumbling and running around over the floor, and some one said: "Who is that?" Witness replied, "John Steakley," and was asked what he wanted, and said he wanted in; the boys replied, "Wait a moment, and I will let you in," and they opened the door and the officer went in. On entering the door he found defendant Looper, Lucas, Griffin, Hoover, Talley and Tinsley, who were in the middle room, defendant being near the door leading into the frosty joint; that he found a little table with A. Johnson on the west side and Sam Lucas on the south end; that appellant was five or six feet from the table and inside of the frosty joint room; that some of the parties ran into the frosty joint and behind the counter, some ran to the front door, and some stayed in the middle room; that he saw some money there in a shot sack; that A. Johnson had this—had a right smart of silver in a shot sack, but he did not know how much. He makes it clear that he did not see anyone on the inside before his entrance; but he states it was his opinion they were rolling dice; that he did not see any dice, nor did he see anybody in any game with dice; he just states his opinion. That he saw no bet, and only recognized two voices, to wit, that of A. Johnson and Sam Lucas; found no dice in the room, and paid no particular attention to the table; that it was just an ordinary table; he never spoke to anyone before hitting the door with a breast yoke; never asked to be permitted to enter, nor did he try to enter before hitting the door; that he hit the door pretty rapidly until Sam Lucas spoke to him; that he did not hit the door after the inquiry as to who he was; that he did not knock the panel out—just split it at the top; that Lucas opened the door, and witness walked in; that he did not know where appellant was before he went in; that he was in the south room when witness went in; that this was the first time he had seen appellant; did not see him with any dice; did not see him in any crap game, and did not see him make any bet; did not know whether he was in the middle room at the time he heard what he testified about or not. This is the State's case. Appellant testified in his own behalf that he lived about four miles east of Cleburne, and was a farmer. He testified positively that he did not play any game of dice, or any other game, that night at the place mentioned by the constable, and that there was no

game played there while he was at the place. He states that he had been in the place about ten minutes when Steakley, the officer, came in, and was in the front room drinking a bottle of frosty when the officer entered. This is the substance of the facts. This is not sufficient. Hanks v. State, 54 Texas Crim. Rep., 1; 111 S. W. Rep., 402.

There are quite a number of bills of exceptions incorporated in the record. As presented, we are of opinion that they are not of sufficient moment to require a reversal. In fact, we are of opinion there is no particular merit in them unless it be the two bills reserved to the refusal of the court to permit the witnesses Talley and Griffin to testify to the fact that they were present at the time the officer speaks of finding the people in the room, and that the witnesses did not engage in any game. The State objected to the introduction of this evidence on the ground that the parties were charged with violating the law on the same occasion. This was simply a ground of objection on the part of the State, and does not verify the fact, if it is a fact, that the parties were charged with violating the law at the same time and place. Grounds of objection do not verify such grounds as statements of facts. Whenever the objection is based upon a fact not verified by the bill it will not be considered. In order to sustain a ground of objection on a statement of facts, the bill must verify the fact. This testimony was offered by appellant as a circumstance tending to show that he did not play. It is rather inferential these witnesses may not have played in the game, though they were present, and yet, if there was a game, appellant may have engaged in it. We hardly feel called upon, in this condition of the record, to reverse simply upon the matters set out in the two mentioned bills.

As the evidence presents the case, we are of opinion that it is not sufficient to sustain the verdict of the jury. The evidence is no stronger in this case than it was in Hanks v. State, 111 S. W., 402. In that case the judgment was reversed for the want of sufficient evidence to sustain the conviction. In fact the evidence in Hanks' case, *supra,* is stronger and more conclusive than it is in this case.

Because we are of opinion the evidence is not sufficient to sustain the conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*